○

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY SUE BIRD,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WELLS FARGO BANK,<br><br>　　　　　Defendant. | Case No. 1:16-cv-01130-DAD-EPG<br><br>ORDER REGARDING SCOPE OF DISCOVERY<br><br>(ECF No. 20) |

  This case proceeds on Kimberly Sue Bird's ("Plaintiff") complaint against Defendant Wells Fargo Bank ("Defendant"), which was removed to this Court on August 1, 2016. Plaintiff was terminated from Defendant's employment on May 6, 2014. Plaintiff alleges that Defendant discriminated against her because of her age and gender, and additionally breached Plaintiff's employment contract. Defendant claims that "Plaintiff was terminated after she failed to comply with Defendant's Information Security Policy and Guidelines and it was determined that he conduct resulted in the theft of private and confidential business information." (ECF No. 6, p. 2).

  This order provides direction regarding the scope and timing of discovery in this matter. As described extensively on the record during conferences on March 1, 2017 and March 30, 2017, discovery in this case has broken down. The parties have been unable to meaningfully

1

meet and confer and reach any agreement on the scope of discovery, long after such matters should have been resolved. Accordingly, the Court will order discovery take place as described in this order in order to move this case forward as efficiently as possible.

## I. BACKGROUND

The Court and parties held a scheduling conference in this case on October 13, 2016. In advance of the scheduling conference, the parties submitted a Joint Rule 26(f) report jointly proposing a deadline for non-expert discovery cut-off of March 6, 2017. (ECF No. 6, p. 4). In that statement, the parties indicated they "do not anticipate this action will involve significant electronic discovery issues. However, the parties have both agreed to preserve any relevant electronically-stored information. To the extent Plaintiff seeks discovery of emails, the parties will meet and confer on proposed search terms and custodians." (ECF No. 6, p. 4). Following the conference, the Court set the deadline for non-expert discovery for March 6, 2017 as requested. (ECF No. 8)

The Court received the first indication that all was not well through the parties' Joint Mid-discovery conference report, dated February 14, 2017, just a few weeks before the non-expert discovery cut-off. (ECF No. 16). Plaintiff asserted in that joint statement that it still intended to take the depositions of nine witnesses, and was "drafting a met [sic] and confer letter to Defendants concerning their responses and the scope of ESI discovery." Defendants asserted that "Plaintiff has not yet noticed any deposition. Plaintiff has not yet reached out to Defendant to meet and confer regarding the scope of ESI discovery." Plaintiff also indicated that Defendant was refusing to provide any information regarding the person who replaced Plaintiff in her job. The Court held a mid-discovery status conference on February 21, 2017 as previously set and scheduled a more extensive discovery conference on the record for March 1, 2017 to hopefully resolve any open issues regarding the scope of discovery.

During the March 1, 2017 conference, the Court heard argument and provided detailed guidance on the scope of discovery on the record for approximately 90 minutes. The Court

then ordered the parties to meet and confer regarding the scope and terms of ESI discovery with the help of the Court's guidance over the following two weeks.  The Court requested a status report on March 15, 2017 as well as proposals for a new schedule to permit discovery to be completed in a timely manner.  (ECF No. 19)  The Court also set a hearing on any outstanding discovery motions for April 14, 2017.

According to documents filed with the Court (ECF No. 20-1), on the afternoon of that conference, March 1, Defendants wrote to Plaintiff to confirm that Plaintiff's deposition would take place one week after Defendants produced documents regarding five loans at issue in the case, certain text messages, and "Emails to/from Plaintiff that include certain custodians/key terms, which you have agreed to provide ASAP," and demanded a list of such terms from Plaintiff by close of business on March 3, 2017.  Defendant concluded the correspondence by stating "If you breach the agreement and fail to provide the list by COB on Friday then our agreement regarding the documents discussed above is null and void ab initio and we will once against take these issues to Judge Grosjean and will move to compel Plaintiff's deposition and seek sanction."  (ECF No. 20-1, p. 9).

Plaintiff sent Defendant a meet and confer letter later that day, March 1, 2017, (ECF No. 20-1), and another meet and confer letter on March 2, 2017 but did not receive a prompt response.  On March 8, Defendant wrote to Plaintiff saying "I do not have this information now," "we will not be able to produce any ESI by March 10 or March 17," and claiming that "the parties have nearly a month to resolve outstanding discovery issues and file briefing regarding a MTC."  (ECF No. 20-1, p. 6).  It does not appear that any telephonic meet and confer took place.

The day before the joint statement on meet and confer was due with the Court, Plaintiff's counsel wrote to Defense counsel explaining that Defendant had not responded to Plaintiff's meet and confer efforts, and stating "Our understanding is that the Court intended the parties to have completed our meet and confer to the extent possible by this point.  As this

has clearly has [sic] not happened, we are concerned that we will not be in a position to comply with the Court's order in a timely manner." (ECF No. 20-1, p. 5). Defendant finally provided its "position with regard to ESI" on March 14, 2017 at 4:33 pm. (ECF No. 20-1, p. 3). Defendant's position included the following:

- "In accordance with its neutral practice, Wells Fargo purged Plaintiff's email box following her termination. Therefore, we are unable to search Plaintiff's mailbox and complete ESI Search No. 1."
- Regarding emails between Plaintiff and her supervisors, Defendant emphasized that "Wells Fargo reserves its right to request that the search be further limited once we have pulled the emails and determined how many are responsive to your search request."
- "Please be advised that due to Wells Fargo's internal processes, and significant queue of other data requests, it will take 6-8 weeks for it to pull the requested ESI. Moreover, Wells Fargo will still need to review the ESI for privilege, privacy and confidentiality."
- "Wells Fargo reserves the right to . . . shift all fees and costs incurred in the collection, review, and production of ESI to Plaintiff and Plaintiff's counsel."

The parties filed a joint statement regarding discovery on March 16, 2017. (ECF No. 20) Far from reflecting the results of two weeks of meaningful meet and confer consistent with the Court's extensive guidance on the record, the 15-page statement revealed a continued lack of agreement on the scope of discovery and obstacle to even beginning the collection and review process. Among other things, the joint statement revealed to the Court:

- Defendant had destroyed Plaintiff's own email. (ECF No. 20, p. 4 ("in accordance with its neutral practice, Defendant purged Plaintiff's email box following her termination. Therefore, Defendant is unable to search Plaintiff's mailbox and complete ESI Search No. 1")). Defendant apparently first made this fact known to

Plaintiff the day before the joint statement was due. Defendant could not yet say whether Plaintiff's email files could be reconstructed.

- Defendant represented it would take another 6-8 weeks to pull electronic mail from its system to even begin the process for attorney review and production, once such a scope is determined. Defendant proposed that "[o]nce Defendant has pulled the emails and determined the number of emails responsive to Plaintiff's searches, it proposes that the parties further meet and confer on ESI production."

- Notwithstanding Defendant's delay and failure to commit to a date of production, Defendant claimed that non-expert discovery cut-off should not extend past June 7, 2017, i.e., approximately 11 weeks from the date of the joint report and presumably 3 weeks after Defendant had pulled the relevant documents to begin its internal review.

- Defendant reserved its supposed "right" to "shift all fees and costs incurred in the collection, review, and production of ESI to Plaintiff and Plaintiff's counsel."

The Court received further insight regarding Defendant's position in Defendant's formal discovery responses, which it requested at the hearing on March 30, 2017. For example, in response to Plaintiff's request for "ALL DOCUMENTS, COMMUNICATIONS OR ELECTRONICALLY STORED INFORMATION RELATING TO PLAINTIFF'S compensation, bonuses, and commissionable loans," Defendant agreed to produce Plaintiff's pay vouchers, offer letter, and compensation plan but stated "Defendant will not conduct a search for further responsive documents in the absence of an agreement with the demanding party as to the specific items requested, search terms, custodians, and temporal parameters of the search. . . . . Defendant retains its right to shift costs of any further search required to Plaintiff." In other words, Defendant took the position that it had no obligation to provide any electronic discovery responsive to Plaintiff's discovery requests unless and until there had been an agreement on all parameters with Plaintiff.

## II.     LEGAL STANDARDS

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Furthermore, discoverable information "need not be admissible in evidence." Id.

Rule 34 of the Federal Rules of Civil Procedure governs the production of documents. Fed. R. Civ. P. 34.  Rule 34 permits a party to serve a request to provide, or permit inspection of, "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a).  The responding party must serve responses and objections that include "for each item or category, . . . that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.  The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection.  The production must then be completed no later than the time for inspection specific in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).  Furthermore, unless otherwise stipulated or ordered by the court, documents and electronically stored information must be provided "as they are kept in the usual course of business" and specifically for electronically stored information, "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E).

Federal Rule of Civil Procedure 26(g)(1) requires that an attorney sign every discovery response (among other documents) to certify that "to the best of a person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a discovery request, response, or objection, it is . . . consistent with these rules and warranted by existing law . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ." Fed. R. Civ. P. 26(g). "[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules—1983 Amendment.  The Advisory Committee notes provide additional guidance:

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. . . .
>
> The rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis. . . . The court may act on motion, or its own initiative. It is entirely appropriate to resort to the amended rule in conjunction with a discovery conference under Rule 26(f) or one of the other pretrial conferences authorized by the rules. . . .
>
> Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision.

Id.

It is well-settled that the party opposing discovery bears the burden of demonstrating why disclosure should be resisted. See Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.") Discovery objections must be stated with specificity; boilerplate (i.e. "general") objections are highly disfavored. See DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The

party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975)).  When objecting on the basis that a discovery request is overly burdensome, the objecting party must affirmatively support its objection with compelling proof in the form evidentiary declarations or other evidence specifically describing the burden. See id. See also A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (providing that "general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections."); Ameritox, Ltd. v. Millennium Labs., Inc., No. 12-CV-7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) ("To demonstrate the undue burden, the movant must provide 'affirmative and compelling proof.'").

In federal litigation, the parties to a case are required to confer "as soon as practicable" and in any event "at least 21 days before" before the initial Rule 16 scheduling conference to inter alia "discuss any issues about preserving discoverable information; and develop a proposed discovery plan." Fed. R. Civ. P. 26(f).  The discovery plan must state the parties' views and proposals on various discovery-related issues including, but not limited to, "the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues; and any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3).

Pursuant to Federal Rule of Civil Procedure 16, "[a]t any pretrial conference, the court may consider and take appropriate action on the following matters: . . . controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37." Fed. R. Civ. P. 16(c)(2)(F). See also Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.")

\\\

**III. ANALYSIS**

As discussed extensively on the record at the March 30, 2017 conference, discovery in this case has completely broken down. Per the parties' own request, non-expert discovery was supposed to be completed by March 6, 2017. That date has come and gone and yet the parties are still arguing over the scope of discovery. Defendant is taking the position that it need not provide any electronic discovery until there is agreement on the scope of production. Defendant also disclosed for the first time on March 14 that it had purged Plaintiff's email inbox and made no commitment to resurrect such files. Defendant has claimed it needs 6-8 weeks to even retrieve potentially relevant material. Defendant provides no timeline for production. The parties also cannot agree on a meaningful schedule. It is as if this case has not yet had its rule 26(f) conference rather than past the date of non-expert discovery cut-off.

Both parties shoulder some of the blame for this breakdown. After all, on October 6, 2016, the parties submitted a discovery plan that indicated that they "do not anticipate any issues relating to the timing, sequencing, phasing or scheduling of discovery." (ECF No. 6, p. 4). The parties further indicated that they did "not anticipate this action will involve significant electronic discovery issues," and that they "have both agreed to preserve any relevant electronically stored information." The Rule 26(f) conference was either not meaningfully conducted or misrepresented to the Court. Additionally, both parties have taken extreme positions regarding the scope of discovery. For example, Plaintiff has requested such overbroad topics as "All SMS, text messages, and emails between Plaintiff and you [Defendant]." Whereas Defendant even refused to produce information about the demographic person replacing Plaintiff in her role. Given these sort of positions, it is not surprising that the parties have been unable to reach agreement.

That said, the Court is particularly troubled by Defendant Wells Fargo's approach to discovery in this case. Defendant has taken the legally unsupportable position that it is not under any obligation to provide electronic discovery unless and until there is full agreement on

search terms. This position has led to the predictable conclusion that discovery is completely stalled and Defendant is not close to meeting its discovery obligations. Defendant also withheld information about Plaintiff's inbox until after the initial discovery cut-off. It both fails to provide any date certain for production and will not extend the schedule a reasonable amount of time. It continues to threaten to have Plaintiff pay its costs without any legal justification. The Court also takes issue with the tone of Defendant's communication, such as telling Plaintiff that Defendant's agreement to produce certain documents will be "null and void ab initio" and that Defendant will request sanctions if Plaintiff did not provide certain search terms by the deadline imposed by Defendant. (ECF No. 20-1, p. 9) Such dialogue is not professional and not a good faith attempt to meet and confer.

The Court's attempts to resolve this discovery dispute using the normal process has also failed. When the Court learned that discovery had fallen so far behind, it scheduled a telephonic conference to discuss all discovery disputes and provide informal guidance to assist the meet and confer process. It spent 90 minutes on the record discussing the proper scope of discovery and instructed the parties to meet and confer with that guidance and report two weeks later. It set a date a month after that for any discovery motions, with the thought that the scope would be agreed quickly and any deficiencies in production could be resolved in the next month.

The Court now knows that, after threatening Plaintiff with (unsupportable) sanctions, Defendant did not provide any substantive meet and confer on the scope of discovery until the day before the Joint Statement was due. Defendant then asserted a right to further narrow the scope in an additional 6-8 weeks. Neither party referred in any way to the Court's guidance on the scope of discovery. Instead, the parties just submitted their very detailed and opposed viewpoints to the Court without proposing any constructive way forward.

Thus, one month past the first deadline for non-expert discovery, there is still no agreement on the scope of discovery. The parties are unable to meet and confer in a

professional, meaningful way. Defendant has no deadline to complete production and there is no operative schedule in place.

The Court has also heard from the parties on three separate conferences. (ECF No. 17, 18, 22) It has received a detailed joint statement of discovery disputes. (ECF No. 16) It has received and reviewed Plaintiff's discovery requests and Defendant's responses and objections. It has received and reviewed substantial meet and confer correspondence.

### IV.   ORDER ON SCOPE OF DISCOVERY

Accordingly, as discussed at the conference, the Court will issue the following order under its authority in Rule 16 regarding the scope of discovery.[1] The Court believes that the following scope of discovery comports with Rule 26(b)(1).

Accordingly the Court orders Defendant to produce the following documents[2]:

- The complete contents of Plaintiff's personnel file.
- Documents regarding Plaintiff's termination from Defendant's employment.
- Any security policy related to the purported reason for Plaintiff's termination, including but not limited to Wells Fargo's Information Security Policy, WFB's Team Member Handbook, the Fresno Policy Report Case No. 14-023634, and correspondence with and forms provided to WFB's Compromised Data team on April 2, 2014.
- Documents regarding any reprimand, discipline, or corrective action to Plaintiff.
- Documents regarding Plaintiff's compensation, bonuses or commissionable loans.
- Documents regarding any loan made to client Harwinder Kaur, Terri and Wand Brill, Brighton Academy, Yurvagit Gill, and Sunny Skies Smog in which

---

[1] To the extent that this order conflicts with Defendant's discovery objections, the objections are overruled.

[2] Documents include communications, electronically stored data, text messages, SMS, and emails.

> Plaintiff participated in the loan application or processing, to the extent such documents reflect work done by Plaintiff, payment of commissions, or a refusal to pay Plaintiff a commission.

- All Compromised Data Reports regarding employees who failed to comply with Wells Fargo's Information Security Policy from May 6, 2012 until May 6, 2015, along with any explanation of codes or data to understand such reports.[3]
- For each employee who violated Wells Fargo's Information Security Policy from May 6, 2012 until May 6, 2015, data indicating the employee's age, gender, and whether the employee was terminated as a result of the violation.
- Plaintiff's Job Description.
- Any legal pleadings in which a court has determined that Wells Fargo & Co. and Wells Fargo Bank, N.A. is a joint employer.
- Demographic data regarding the age, gender, and employment status (whether still working, fired or resigned) of all Business Development Officers who worked for Defendant from May 6, 2012 until May 6, 2015.

Defendants shall immediately design and implement a discovery plan to diligently and in good faith produce documents consistent with this order and schedule its production on a rolling basis to conclude no later than June 1, 2017.  It is Defendant's obligation to produce responsive documents consistent with the discovery rules.  Defendant need not re-produce any document that it has already produced to Plaintiff.

Within two (2) weeks from this order, Defendant must disclose the scope of its search including any search terms, custodians or other limitations.  The parties shall not engage in further meet and confer regarding the scope of production.  To the extent that Plaintiff believes that Defendant's searches do not comport with Defendant's discovery obligations, Plaintiff may

---

[3] Defendant may not limit the reports to those involving only non-electronic data and/or burglary robbery.  Note that Defendant has claimed that Plaintiff was terminated for failing to comply with "Wells Fargo's Information Security Policy" without such limitations.  See Defendant's Response to Special Interrogatory No. 2.

file a motion for sanctions four (4) weeks from today, i.e., April 28.

Additionally, within 7 days of this order, Defendant shall produce any policies regarding the destruction of employee emails, including current, former, and terminated employees, including the policy Defendant contends authorized the destruction of Plaintiff's email box. Plaintiff has leave to file a motion for sanctions under Federal Rule of Civil Procedure 37(e) to the extent that Defendant is unable to restore or replace Plaintiff's email box.

Consistent with Rule 26(b)(5), Defendant shall provide a privilege log within 14 days of this order regarding any documents withheld as privilege to date.  Additionally, any produced document that has a redaction shall be included on the privilege log.  Defendant shall provide a supplemental privilege log with any subsequent production that redacts or omits privileged documents within 14 days after the production that omitted such privileged document.

Electronically stored information shall be produced in a format that extracts the text and preserves the metadata from native files.

The Court will issue a revised schedule for the remainder of the case shortly.

IT IS SO ORDERED.

Dated:  **March 31, 2017**           /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE